UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON SAMPLE, | ) |
|  Plaintiff, | ) |
| v. | ) Civil Action No. 05-0596 (PLF) |
| HARLEY LAPPIN, *et al*., | ) |
|  Defendants. | ) |

OPINION

This matter is before the Court on defendants' motion to dismiss and on the parties' cross-motions for summary judgment.[1] Having considered the motions, the oppositions thereto, and the entire record in this case, the Court will grant the motions in part and deny them in part.

I.  BACKGROUND

Having been convicted of money laundering and other fraud-related offenses, plaintiff is a federal prisoner who currently is incarcerated at the Federal Correctional Institution in Beaumont, Texas ("Beaumont Low"). Complaint ("Compl.") ¶ 5. He describes himself as "an observant Jew" who "practiced Judaism before his incarceration and continues his practice of Judaism while confined." *Id.* ¶ 8; *see* Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment as to Count I ("Pl.'s Mot."), Ex. 1 ("Sample

---

[1] Defendants also move to transfer this action to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). The Court will deny the transfer motion without prejudice.

Decl."), ¶¶ 19-23.  He "sincerely believes that he must drink at least 3.5 ounces of red wine (a reviit) while saying Kiddush, a prayer sanctifying the Sabbath, during Friday night and Saturday shabbos services."  Compl. ¶ 9; *see* Sample Decl. ¶¶ 2, 8.  Under Beaumont Low's current procedures, "[d]uring the Shabbat services," plaintiff says "Kiddush over grape juice and matzah, which is contrary to [his] sincerely held belief that a Jewish adult should say Kiddush over a glass of wine, and challah bread."  Sample Decl. ¶ 22.  According to plaintiff, "[s]aying Kiddush over grape juice or bread alone is only an acceptable substitute for adults who are sick, and cannot consume alcohol.  The ritual of Kiddush is more complete if said over 3 to 5 ounces of wine."  *Id*. ¶ 8.  In addition, plaintiff "sincerely believes that he must drink four cups containing a[t] least 3.5 ounces of wine during the Passover seder."  Compl. ¶ 10; *see* Sample Decl. ¶¶ 2, 15.

Through the inmate grievance process, plaintiff challenged the Federal Bureau of Prisons ("BOP") regulation which allows inmates to consume wine during religious observances only at the Warden's discretion.  He asked that BOP either provide wine or permit him to purchase wine for consumption during Shabbat and Passover observances.  Compl. ¶ 13; *see* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer ("Defs.' Mot."), Attach. A (Request for Administrative Remedy dated Aug. 20, 2004).  Plaintiff also asked BOP either to amend its policy regarding wine for religious rituals, or to "draft an operations memoranda on how Wardens exercise their discretion in permitting or not permitting wine during religious services."  Defs.' Mot., Attach. A (Request for Administrative Remedy dated Aug. 20, 2004).  Relying on Program Statement 5360.08 (August 22, 2002 Change Notice), <u>Religious Beliefs and Practices</u>, the Warden denied plaintiff's request, explaining that:

> There is no provision which *requires* wine be provided for inmate consumption therefore it is at the discretion of the Warden. Wine has been deemed a security issue at this institution and therefore is not provided to any religious faith for inmate consumption. Additionally, the Rabbi has been consulted. He confirms kosher grape juice as an acceptable alternative to wine.

Defs.' Mot., Attach. A (Response to Request for Administrative Remedy #349793-F1 dated September 14, 2004).

Plaintiff appealed this decision, unsuccessfully, to the Regional Director. *See* Compl. ¶ 14; Defs.' Mot., Attach. A (Regional Director Response dated October 22, 2004). With respect to plaintiff's request on appeal for an amendment to Program Statement 5360.08, the Regional Director responded as follows:

> Current Bureau of Prison's policy provides guidance to staff on the use of wine for religious services. According to Program Statement 5360.08 . . ., inmates may be permitted to receive small amounts of wine as part of a religious ritual, only when administered under the supervision of clergy authorized by the Bureau of Prisons to perform the ritual. There is no need to write new policy on this issue.

Defs.' Mot., Attach. A (Regional Director Response dated October 22, 2004). At the last level of the appeal process, the Administrator of National Inmate Appeals concurred with the responses provided by the Warden and Regional Director, and denied the appeal. *Id.*, Attach. A (National Inmate Appeals Response dated January 27, 2005).

Plaintiff alleges that the denial of his request for wine violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1 *et seq.*, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*. Compl. ¶¶ 1, 15-22 (Count I). Further, he alleges that BOP's Director "failed to train, supervise, and

promulgate policies requiring his subordinates to comply with RFRA and RLUIPA." *Id.* ¶ 23 (Count II). He demands declaratory and injunctive relief. *Id.* ¶ 24.

## II. DISCUSSION

### A. Plaintiff Need Not Exhaust Administrative Remedies Regarding Request for Staff Member to Administer Wine

In relevant part, the Prison Litigation Reform Act provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement of Section 1997e(a) is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Section 1997e(a) "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," and, where possible, to "satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524-25. A prisoner must complete the administrative process "regardless of the relief offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the BOP's administrative remedies. *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

In his inmate grievance, plaintiff challenges the Warden's decision to prohibit inmates' consumption of wine on the ground that the decision violates federal law, and requests permission to drink wine during Sabbath services and the Passover seder. *See* Defs.' Mot.,

4

Attach. A (Request for Administrative Remedy dated August 20, 2004). He neither suggests a procedure by which the wine could be provided to him, nor identifies a person to administer the wine. In Count I of his Complaint, plaintiff proposes that "other BOP staff, such as the institution chaplain, [] administer wine" to him instead of requiring a rabbi to perform this function. Compl. ¶ 20. Defendants contend that plaintiff failed to exhaust his administrative remedies "with respect to his request that a staff member, other than the Jewish Rabbi, provide him with the wine he seeks." Defs.' Mot. at 4 & Attach. B (Watts Decl.) ¶ 3.[2] The Court rejects this argument.

Plaintiff's inmate grievance and Complaint are consistent: his ultimate goal is the unburdened exercise of his sincere religious belief. The record makes clear that plaintiff has exhausted his administrative remedies with respect to his request for wine. It matters not whether he asked that a rabbi, a chaplain, or a BOP staff member administer the wine to him. Plaintiff's obligation to exhaust his administrative remedies does not require that he posit every conceivable alternative means by which to achieve his goal.

### B. Summary Judgment on Plaintiff's RFRA Claim Will Be Denied in Part Without Prejudice

#### 1. Summary Judgment Standard

The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or

---

[2] Defendants also argue that plaintiff exhausted his administrative remedies with respect to his request for wine only under BOP Program Statement 5360.08, Religious Beliefs and Practices (August 22, 2002 Change Notice), which since has been superceded. See Defs.' Mot. at 4 n.1. Plaintiff cannot be faulted for failing to challenge a policy that was not yet in effect at the time he submitted his inmate grievance.

declarations, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When evaluating a summary judgment motion, the Court does not make credibility determinations, weigh the evidence, or draw inferences from the facts found; those are jury functions, not those of a judge. *Id.* at 255; *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

2. Plaintiff's *Prima Facie* Case Under RFRA

Prisoners retain constitutional rights in prison, including the right to the free exercise of religion. *See, e.g., Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"); *Levitan v. Ashcroft*, 281 F.3d 1313, 1317 (D.C. Cir. 2001). Generally, RFRA provides that the federal government "shall not

substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).[3] "Thus, a plaintiff establishes a *prima facie* claim under RFRA by proving the following three elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion." *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001). If plaintiff successfully makes out his *prima facie* case, defendants then must show that the burden placed on the religious exercise is permissible. *See Gartrell v. Ashcroft*, 191 F.Supp.2d 23, 37 (D.D.C. 2002) (applying burden-shifting analysis under RFRA). A substantial burden on a person's exercise of religion is permissible only if:

> [the government] demonstrates that application of the burden to the person –
>
> (1)  is in furtherance of a compelling governmental interest; and
>
> (2)  is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(b). For purposes of RFRA, the term "demonstrates" means "meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C. § 2000bb-2(3).

---

[3]  The Supreme Court instructs that RFRA is unconstitutional insofar as it purports to regulate state and local governments. *City of Boerne v. Flores*, 521 U.S. 507 (1997). RFRA remains valid as applied to the federal government, however. *See Webman v. Federal Bureau of Prisons*, No. 05-5031, slip. op. at 4 (D.C. Cir. Mar. 28, 2006) (recognizing Congress' "power to enforce RFRA against the federal government"); *Henderson v. Kennedy*, 265 F.3d 1072, 1073 (D.C. Cir. 2001) (declaring that RLUIPA's amendments to RFRA regarding exercise of religion "remove the doubt . . . that the portion of RFRA remaining after [*Flores*]. . . survived the Supreme Court's decision striking down the statute as applied to the States"), *cert. denied*, 540 U.S. 1218 (2004). RLUIPA's amendments to RFRA are applicable. *See Kikumura v. Hurley*, 242 F.3d at 960 (noting RLUIPA's amendment of RFRA's definition of term "exercise of religion"). There is no separate cause of action under RLUIPA, however. *Ish Yerushalayim v. United States Dep't of Corr.*, 374 F.3d 89, 92 (2d Cir. 2004) (concluding that RLUIPA "clearly does not create a cause of action against the federal government or its correctional facilities").

a.  Exercise of Religious Beliefs

The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).[4]  The exercise in question need not be mandatory.  *Cf. Levitan v. Ashcroft*, 281 F.3d at 1319 (finding no requirement that consumption of communion wine by Catholic prisoners be mandatory to warrant First Amendment protection).  In this case, there is no genuine issue of material fact that the exercise in question is religious in nature.  It is "an important part of the Jewish religion to say Kiddush over a glass of wine" and to consume "four glasses of wine . . . during the Passover Seder."  Pl.'s Mot., Ex. 3 (Goldstein Stip.) ¶¶ 4, 7-9; *see* Defs.' Mot., Attach. (Van Baalen Decl.) ¶ 13.[5]

b.  Sincerity of Religious Beliefs

"It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of a particular litigant's interpretation of those creeds."  *Hernandez v. Comm'r of Internal Revenue Serv.*, 490 U.S. 680, 699 (1989).  The Court's inquiry

---

[4] RFRA refers to the definition of "religious exercise" set forth in RLUIPA.  *See* 42 U.S.C. § 2000bb-2(4).

[5] There appears to be a discrepancy as to the quantity of wine plaintiff believes he must drink.  According to the Complaint, plaintiff alleges that he must consume one cup of wine during Friday and Saturday Shabbat services, and four cups of wine during the Passover seder.  *See* Compl. ¶¶ 9-10.  Each cup of wine must be at least 3.5 ounces.  *Id.*  In his declaration, plaintiff states that he must consume slightly larger quantities, "between 3 to 5 ounces of wine every Friday and Saturday during the saying of Kiddush," and "3 to 5 ounces of wine four times" during the Passover seder.  Sample Dec. ¶ 2.  It does not appear, however, that the quantity of wine is a material fact.  If BOP forbids consumption of a smaller quantity of wine, it is unlikely that it would allow a larger quantity.

is limited to "whether a claimant sincerely holds a particular belief and whether the belief is religious in nature." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

Based on this record, there is no genuine issue of material fact in dispute as to the sincerity of plaintiff's religious beliefs. Plaintiff is Jewish and he believes that he must consume a certain quantity of wine – not grape juice – as an important part of his observances of the Jewish Sabbath and Passover. Whether plaintiff declared his Jewish faith at the time of his incarceration is of no moment.[6] At all times relevant to the complaint, plaintiff declares his Jewish faith, and his religious preference, Jewish, is duly reflected in BOP's records. *See* Defs.' Mot., Attach. (Inmate History – Religion).

### c. Substantial Burden on Exercise of Sincerely Held Religious Beliefs

Plaintiff completes his *prima facie* case under RFRA, then, if he shows that BOP's policies substantially burden the exercise of his sincere religious beliefs. A substantial burden exists "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jenkins v. Angelone*, 948 F.Supp. 543, 546 (E.D.Va. 1996) (quoting *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)); *see Sherbert v.*

---

[6] Defendants question the sincerity of plaintiff's religious beliefs because he allegedly did not declare his religious preference as Jewish upon his initial entry into BOP in June 2000. *See* Van Baalen Decl. ¶ 10. BOP records reflected "religion unknown" initially, then "no preference" until May 18, 2001, when records reflect "Protestant." *See* Defs.' Mot., Attach. (Inmate History – Religion). As of September 17, 2001, BOP's records reflect plaintiff's religious preference as "Jewish." *See id.* The accuracy or inaccuracy of BOP records does not necessarily reflect the sincerity of plaintiff's religious beliefs.

*Verner*, 374 U.S. 398, 404 (1963) (award of government benefits would force applicant to "choose between following the precepts of her religion . . . and abandoning one of the precepts of her religion").

> Regarding the religious use of wine, BOP regulations in relevant part provide:
>
> Inmates may be permitted to receive small amounts of wine as part of a religious ritual, only when administered under the supervision of clergy authorized by the Bureau of Prisons to perform the ritual.
>
> Because wine is otherwise a contraband substance, it can only be administered under strict control and supervision. Inmates will not be allowed to administer wine to other inmates. For purposes of this policy, the consumption of wine under these circumstances will not be considered consumption of alcohol or ingestion of an illegal substance.

Defs.' Mot., Attach. C (Program Statement 5360.08, Religious Beliefs and Practices, Sec. 20 (August 22, 2002 Change Notice)).[7] Further, the Program Statement authorizes each institution to develop additional policies in the form of an Institution Supplement "for operating religious programs and activities." *Id.*, Sec. 22.[8] Beaumont Low's Warden evidently exercised his discretion by declaring the consumption of wine a security threat, and by refusing to provide

---

[7] The August 22, 2002 Change Notice to Program Statement 5360.08 was in effect at the time plaintiff pursued his inmate grievance. Neither Program Statement 5360.07 (effective August 25, 1997) nor the portion of Program Statement 5360.08 (effective May 25, 2001) amended by the August 22, 2002 Change Notice is relevant here.

[8] The current policy, Program Statement 5360.09 (effective December 31, 2004), directs each institution to develop an Institution Supplement for operating religious programs and activities, which must include "[p]rocedures for religious fasts [and] ceremonial meals" and "[p]rocedures and limitations for storage and provision of religious wine." *Id.*, Sec. 20.

wine for any inmate's consumption. *See* Defs.' Mot., Attach. A (Response to Request for Admin. Remedy #349793-F1); Defs.' Reply at 10-11.[9]

Plaintiff could receive wine for religious services only if Beaumont Low's Warden were to allow wine at the institution, and if an authorized rabbi were to administer the wine in the course of the religious ritual. Clearly the Warden is unwilling to provide plaintiff with wine, regardless of its quantity or alcohol content, and BOP is unwilling to further amend its policies. Even if plaintiff were allowed a quantity of wine, there would be no rabbi present to administer it. The contract rabbi visits Beaumont Low only once a month. Van Baalen Decl. ¶ 5. According to plaintiff, "Jews are commanded not to work during Shabbat," and, therefore, the rabbi "cannot drive to the prison" for weekly Shabbat services. Sample Decl. ¶ 22.[10] Nor does it appear that a rabbi is present for the Passover seder, during which prisoners are supervised by the prison chaplain and prison staff. *Id*. ¶ 14.

Currently, the BOP regulation and its implementation at Beaumont Low do not merely inconvenience plaintiff. Rather, plaintiff effectively is prohibited from exercising his sincere religious beliefs in consuming wine during Sabbath and Passover services. Plaintiff successfully makes out a *prima facie* case under RFRA.

---

[9] Beaumont Low's Institution Supplement has not been made a part of this record by either party.

[10] During discovery, it might be appropriate to determine whether this statement is true of all rabbis or only Orthodox rabbis.

2. Furthering a Compelling Governmental Interest by the Least Restrictive Means

The government's application of the burden to the person's exercise of religion is permissible only if it furthers a compelling governmental interest *and* is the least restrictive means of furthering that interest. *See Jolly v. Coughlin*, 76 F.3d at 475 (applying RFRA's "compelling interest" test to religious exercise claims of inmate). The Court considers "whether there is a compelling government reason, advanced in the least restrictive means, to apply the prison regulation *to the individual claimant*." *Kikumura v. Hurley*, 242 F.3d at 962 (emphasis added); *see Gonzales v. O Centro Esperita Beneficente Uniao Do Vegetal*, __ U.S. __, __, 126 S.Ct. 1211, 1220 (2006) (government must "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' – the particular claimant whose sincere exercise of religion is being substantially burdened"). "[O]nly those interests of the highest order . . . can overbalance legitimate claims to the free exercise of religion." *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972).

Defendants argue that the government has a compelling interest in controlling alcohol consumption and intoxicants in BOP's correctional facilities. Defs.' Mot. at 29. Among the legitimate penological interests for restricting inmates' access to alcohol are "security and order of the prison, rehabilitation, punishment, deterrence of criminal behavior, and a non-hostile work environment for prison staff." Defs.' Mot., Attach. (Thomas Decl.) ¶ 4. Defendants link the availability of intoxicants to violent or otherwise disruptive behavior at BOP facilities, noting that a significant percentage of disciplinary incidents involved violations of the regulation prohibiting inmates from making, possessing, or using intoxicants. Thomas Decl. ¶¶ 5, 9.

Plaintiff concedes this point, stating that [t]here is no argument that controlling alcohol consumption is a compelling government interest." Pl.'s Mot. at 22 .

Plaintiff contends – and the Court agrees – that defendants fail to demonstrate that an outright ban at Beaumont Low on this plaintiff's consumption of wine as part of a religious ritual is the least restrictive means of furthering the government's compelling interest. "[T]he government cannot meet its burden to prove least restrictive means unless it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Gartrell v. Ashcroft*, 191 F.Supp.2d at 39. Recognizing that defendants need not "refute every conceivable option in order to satisfy the least restrictive means prong of RFRA," *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir.), *cert. denied*, 519 U.S. 874 (1996), this Court simply cannot determine on this record whether the parties meet their respective burdens on summary judgment.

BOP policy allows inmates to receive small amounts of wine as part of religious rituals under certain controlled circumstances. The Program Statement at issue does not define "small amount," and the parties' submissions shed no light on this matter. Beaumont Low's Warden apparently has chosen to exercise his discretion to bar the religious use of wine for reasons that are not explained fully in this record. Defendants speculate that accommodating plaintiff's request would create an "administrative nightmare" leading to "chaos in prisons." Defs.' Mot. at 30-31.[11] Their assertions are speculative, unsupported by the current record, and

---

[11] Defendants worry about the appearance of favoring one Jewish inmate over other inmates, whether Jewish or not. Defs.' Mot. at 30. In the alternative, BOP asserts that it would be forced to treat members of other faiths equally, allowing other inmates who sincerely believe in consuming wine as part of their religious observances to consume wine in amounts of their

(continued...)

neither compelling nor sufficient to meet the government's burden of showing that an outright ban is the least restrictive alternative under RFRA.

### III.  CONCLUSION

The Court concludes that plaintiff makes out a *prima facie* case under RFRA and that defendants establish a compelling government interest in controlling alcohol consumption and intoxicants in BOP facilities. At this stage of the proceedings, neither plaintiff nor defendants have met their respective burdens with respect to the "least restrictive means" element. A separate Order to this effect shall issue this same day.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: March 31, 2006

---

[11](...continued)
choice. Van Baalen Decl. ¶ 7. Weekly allowances of several ounces of wine, they say, "would definitely encourage non-Jewish inmates with issues related to chemical dependency to change their religious preference to Jewish thereby undermining the integrity of the Jewish religious program." *Id*. ¶ 8.